UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MATTHEW HYNAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-02816-JMS-MJD |
| | ) | |
| XPO LOGISTICS FREIGHT, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ENTRY

Plaintiff Matthew Hynan filed this action on September 13, 2018 against Defendant XPO

Logistics Freight, Inc. ("XPO") alleging violations of the Family and Medical Leave Act and the

Americans with Disabilities Act.  XPO now moves to dismiss and compel arbitration under the

Federal Arbitration Act, 9 U.S.C. § 2.  [Filing No. 12.]  In addition to the arbitration clause (which

provides for arbitration of certain issues in Charlotte, North Carolina), the Confidential

Information Protection Agreement ("Agreement") at issue contains a forum selection clause

providing for venue in the state and federal courts in North Carolina.

Both parties ultimately recognize in their briefing that this Court cannot compel arbitration

in Charlotte, which is outside of this District.  But the North Carolina federal court can.  Therefore,

after addressing Mr. Hynan's lone argument against venue in North Carolina, the Court

**TRANSFERS** this matter to the U.S. District Court for the Western District of North Carolina,

Charlotte Division.  Insofar as it pertains to this Court's docket, the Court **DENIES** XPO's Motion.

# I.
## BACKGROUND

The following facts are drawn from the allegations in Mr. Hynan's Complaint, [Filing No. 1], and the evidence submitted by XPO in conjunction with its Motion. *Cf. Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809-10 (7th Cir. 2011) (noting that courts may consider "evidence outside the pleadings" in addressing venue issues). XPO hired Mr. Hynan in July 2016 as a Service Center Manager in Grand Rapids, Michigan, and later promoted him to District General Manager serving the Indianapolis, Indiana region. [Filing No. 1 at 3-4.] In his role as a District General Manager, Mr. Hynan was responsible for overseeing XPO's business operations in the Indianapolis region. [Filing No. 17-1 at 2.]

As a condition of his employment, Mr. Hynan signed the Agreement, which contains two separate provisions addressing the proper forum for resolving disputes between Mr. Hynan and XPO. The first is section 18(b), which provides:

> (b) ***Arbitration of Claims Initiated By You:*** Any claim you wish to initiate arising out of or relating to this Agreement, the breach thereof, your employment with us, or the termination of that employment will be resolved by binding arbitration before a single arbitrator in the City of Charlotte, North Carolina administered by the American Arbitration Association in accordance with its Labor, Employment & Elections Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

[Filing No. 12-1 at 11.] Section 18(d) sets forth where any lawsuit must be filed:

> (d) ***Consent to Jurisdiction and Waiver of Jury Trial:*** You hereby irrevocably submit to the jurisdiction of any state or federal court located in Mecklenburg County North Carolina . . . . To the extent that, notwithstanding Section 18(b), you bring an action in any court, you agree to do so exclusively in the state or federal court located in Mecklenburg County, North Carolina, provided that nothing herein shall waive the Company's right to demand that you comply with Section 18(b).

[Filing No. 12-1 at 11 (emphasis in original).] The Agreement also contains a choice-of-law clause which provides: "This Agreement shall be governed by and construed in accordance with its

2

express terms, and otherwise in accordance with the laws of the State of North Carolina, without reference to its principles of conflicts of law." [Filing No. 12-1 at 11.]

XPO terminated Mr. Hynan's employment on November 27, 2017. [Filing No. 1 at 4.] According to Mr. Hynan, however, the termination violated his rights under the ADA and FMLA. [Filing No. 1.] After filing a charge with the EEOC and receiving a right to sue letter, Mr. Hynan filed this lawsuit. [Filing No. 1 at 2.] On December 12, 2018, XPO requested that Mr. Hynan voluntarily dismiss his lawsuit and pursue arbitration under the Agreement. [Filing No. 12-2 at 2.] On December 26, 2018, XPO filed its Motion to Dismiss and to Compel Arbitration, which is ripe for decision. [Filing No. 12.]

## II.
### DISCUSSION

From the outset, it appears that both parties have shifting positions about the appropriate procedural mechanism for resolving XPO's Motion. On the one hand, XPO's Motion seeks to stay and compel arbitration under the Federal Arbitration Act (the "FAA"). *See* 9 U.S.C. §§ 3-4. In response, Mr. Hynan argues that, because the employment contract provides for arbitration outside of this District, the Court may not compel arbitration, but nonetheless should stay this matter should the Court otherwise agree with XPO's position. [Filing No. 15 at 4-5; Filing No. 15 at 9.] In reply, XPO concedes that this Court is without power to compel arbitration in North Carolina, but instead argues that this matter should be dismissed for improper venue under Rule 12(b)(3). [Filing No. 13 at 9-10.]

Both parties are correct in one respect: this Court may not compel arbitration in North Carolina. *Faulkenberg*, 637 F.3d at 808 ("[U]nder § 4 of the FAA, a district court cannot compel arbitration outside the confines of its districts."). But Rule 12(b)(3) does not provide any basis for dismissing Mr. Hynan's Complaint based upon the forum selection clause. Rather, as the Supreme

Court explained in its seminal decision *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. 49, 55 (2013). XPO's reliance on antiquated circuit caselaw to the contrary is misplaced.

Rather, "[28 U.S.C.] § 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms" for forum selection clauses. *Id.* at 61. Which mechanism applies in a particular case depends on whether the appropriate forum is another federal court or is some other forum—such as an arbitral forum. If it is the former, then the district court may transfer the matter under § 1404(a). But if it is the latter, then the court must dismiss this matter under the common law *forum nonconveniens* doctrine. *See id.* at 60-61; *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 657 (7th Cir. 2017) ("The district court's order of dismissal represented its decision that this dispute belongs in the arbitral forum selected by the parties, not the court. Such a dismissal is analogous to one based on *forum non conveniens*.").

The result would differ (transfer versus dismissal), though the analysis under either mechanism is similar. Both require consideration of various private interests (such as access to evidence and witnesses and the availability of compulsory process) and public interests (such as court congestion, local interests in resolving certain cases, and the trial court's familiarity with governing law). *Atl. Marine*, 571 U.S. at 62 n.6. But "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* at 63 (internal quotation omitted). A valid forum selection clause renders the plaintiff's choice of forum irrelevant and reflects a "waive[r of] the right to challenge the

preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Only in the "most unusual cases" may the public-interest factors listed above override the "parties' settled expectations" as represented in a forum selection clause." *Id.* at 66.

As noted, the Agreement sets forth both an arbitration clause requiring arbitration of some disputes in Charlotte, North Carolina, which is a type of forum selection clause agreeing to litigate before a private arbitrator, *see Jackson v. Payday Fin., LLC*, 764 F.3d 765, 780 n.39 (7th Cir. 2014) ("[T]he Supreme Court has treated arbitration provisions as forum selection provisions . . . ."), and an additional forum selection clause specifying the state or federal courts located in Mecklenburg County, North Carolina. (Presumably, the latter is designed to cover disputes outside the scope of the arbitration agreements or any post-arbitration disputes about the arbitration's validity.) While XPO originally asked the Court to compel arbitration, both parties now acknowledge that this Court cannot compel arbitration before an arbitrator outside of the geographic constraints of this District. The initial issue, then, is whether this Court should undertake to ascertain whether this dispute must be arbitrated under the terms of the Agreement (and, if so, dismiss the lawsuit) or whether the Court should transfer it to the appropriate District Court in North Carolina.

The Court finds that addressing whether transfer is available under § 1404(a) is the more proper starting point. And the first determination is whether the Agreement's forum selection clause is valid because, if so, the clause must be enforced absent an "extraordinary" public interest to the contrary. *Atl. Marine*, 571 U.S. at 62. Mr. Hynan has challenged the clause and argues in general that the Court should not require Mr. Hynan to proceed because litigating in North Carolina would be a great inconvenience for him. According to Mr. Hynan, he did not work in North

Carolina and his witnesses are located in Indiana. Mr. Hynan also argues that the forum selection clause is unconscionable, again because of the cost of travel and unavailability of witnesses, in addition to the lack of any connection between his claims and North Carolina.

Mr. Hynan's arguments, in addition to lacking evidence, resound wholly in the private-interest realm. Assuming that the forum selection clause in this case is valid, they are the types of arguments that the Court "should not consider" when evaluating whether transfer under § 1404(a) may be appropriate. *Id.* at 64. Mr. Hynan's unconscionability argument could undermine the validity of the forum selection clause, but his argument on this point is underdeveloped and, in any event, unavailing. North Carolina law governs interpretation of the Agreement under its choice-of-law clause. In *Tillman v. Commercial Credit Loans, Inc.*, a plurality of the North Carolina Supreme Court set forth the following test for unconscionability:

> A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability. . . . [P]rocedural unconscionability involves "bargaining naughtiness" in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power. Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms.

655 S.E.2d 362, 370 (N.C. 2008) (plurality opinion) (internal quotations and citations omitted). The *Tillman* analysis, though issued by a plurality, has subsequently found acceptance among the intermediate state court of appeals and district courts. *See, e.g.*, *Westmoreland v. High Point Healthcare, Inc.*, 721 S.E.2d 712 (N.C. Ct. App. 2012); *United States ex rel. TGK Enters., Inc. v. Clayco, Inc.*, 978 F. Supp. 2d 540, 544-47 (E.D.N.C. 2013). *But see King v. Bryant*, 795 S.E.2d 340, 346-47 (N.C. 2017) (noting the limited applicability of North Carolina's unconscionability doctrine as applied to arbitration agreements under the Supreme Court's interpretation of the FAA).

In order to "prove both procedural and substantive unconscionability," a party must offer evidence to establish that these unfair conditions exist.  *See TGK Enters.*, 978 F. Supp. 2d at 545 (quoting *Tillman*, 655 S.E.2d at 370).  All Mr. Hynan has offered in support of unconscionability (which, again, is his burden to prove) is the unsworn assertion that this lawsuit has no connection to North Carolina and that it would be costly and inconvenient for Mr. Hynan and his witnesses to travel to North Carolina.  That is plainly insufficient to demonstrate "'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power" or "harsh, one-sided, and oppressive contract terms."  *Tillman*, 655 S.E.2d at 370; *see TGK Enters.*, 978 F. Supp. 2d at 544-47 (rejecting unconscionability argument for lack of proof).  Mr. Hynan may not avoid the forum-selection clause of the Agreement based upon any alleged unconscionability.  As a consequence, under *Atlantic Marine*, all of the private interest factors must be deemed to favor transfer, and no party has identified any public interest factors in opposition, let alone one strong enough to override the parties' selected forum.

Transfer to the Charlotte Division of the U.S. District Court for the Western District of North Carolina is therefore proper under § 1404(a).  Even though XPO seeks dismissal under the Agreement's arbitration clause, the Supreme Court has made clear that the federal courts have "leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422, 431 (2007) (internal quotation removed).  Neither dismissal for *forum non conveniens* (requiring a determination that this matter must be arbitrated outside of this district) nor transfer under § 1404(a) would reach the merits of Mr. Hynan's claims.  Moreover, transfer would not do any disservice to the pro-arbitration policies expressed in the FAA because the receiving court will be able to promptly address the fully-briefed issue of arbitration and then stay the matter and compel

arbitration under 9 U.S.C. §§ 3-4 if appropriate. Therefore, based upon the enforceable forum selection clause requiring any lawsuits to proceed in the courts located in Mecklenburg County, North Carolina, this Court will transfer this matter to the Charlotte Division of the U.S. District Court for the Western District of North Carolina.

## III.
### CONCLUSION

For the foregoing reasons, the Court concludes that this matter should have been filed, if at all, in the U.S. District Court for the Western District of North Carolina, Charlotte Division, pursuant to the terms of the parties' Agreement. The Court therefore **TRANSFERS** this matter to that court. The issue of whether Mr. Hynan's claims must be arbitrated remains for the transferee court to decide. Insofar as it pends in this Court, the Court **DENIES** XPO's Motion to Dismiss and to Compel Arbitration. [12]

Date: 4/15/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**